# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ————————————————————— )<br>PATRICK K. MCDOWELL and P.K.M. )<br>CONTRACTORS, INC., )<br> )<br>  Plaintiffs, )<br> )<br>  v. )<br> )<br>TOWN OF HARWICH and MARK T. )<br>HOLMES, )<br> )<br>  Defendants. )<br>————————————————————— ) | Civil Action No. 24-cv-10798-MJJ |

## <u>MEMORANDUM OF DECISION</u>

January 15, 2026

JOUN, D.J.

Patrick K. McDowell ("McDowell") and his company P.K.M. Contractors, Inc. ("P.K.M.") (collectively, the "Plaintiffs") commenced this action against the Town of Harwich ("the Town") and a police officer thereof, Officer Mark T. Holmes ("Holmes"), (collectively, the "Defendants") on March 3, 2024. [Doc. No. 1]. Plaintiffs seek damages for economic and emotional injuries resulting from a suspension and eventual lifetime ban of McDowell's commercial driver's license ("CDL"). *See generally* [*id.*]. According to Plaintiffs, both the suspension and the eventual enactment of the lifetime ban are based, at least in part, upon Holmes' fabrication of three motor vehicle incidents involving McDowell. *See generally* [*id.*].

The complaint raises six claims: a violation of 42 U.S.C. § 1983 against the Town and Holmes (Count One), a violation of the Massachusetts Civil Rights Act against the Town and Holmes (Count Two), negligence against the Town and Holmes (Count Three), lack of proper

supervision against the Town (Count Four), intentional infliction of emotional distress against Holmes (Count Five), and negligent infliction of emotional distress against the Town and Holmes (Count Six). [*Id.*].

On September 29, 2025, Defendants filed a motion for summary judgment of all claims. [Doc. No. 29]. On November 6, 2025, Defendants filed a motion to strike exhibits accompanying a counsel affidavit submitted in support of Plaintiffs' opposition to the motion for summary judgment. [Doc. No. 39]. For the reasons set forth below, both of Defendants' motions, [Doc. Nos. 29, 39] are GRANTED.

## I.    PROCEDURAL HISTORY

The complaint was filed on March 28, 2024. [Doc. No. 1]. On January 21, 2025, Defendants filed a motion for judgment on the pleadings. [Doc. No. 20]. Defendants orally withdrew that motion during a status conference held on March 5, 2025. [Doc. No. 26]. Defendants then filed a motion for summary judgment on September 29, 2025. [Doc. No. 29].

On October 18, 2025, Plaintiffs filed an opposition to the motion for summary judgment, [Doc. No. 32], a memorandum in support of its opposition, [Doc. No. 34], responses to Defendants' statement of material facts, [Doc. No. 33], and an accompanying affidavit in support of its responses to Defendants' statement of material facts, [Doc. No. 33-1]. On October 20, 2025, I rejected Plaintiffs' responses to Defendants' statements of material fact, [Doc. No. 33], because it failed to comply with Local Rule 56.1 and my standing order regarding motion practice, [Doc. No. 8]. [Doc. No. 35]. I permitted Plaintiffs to refile, and they did so the next day. [Doc. No. 36]. Plaintiffs did not also refile the accompanying affidavit and attached exhibits.

On November 6, 2025, Defendants filed a motion to exclude two exhibits submitted alongside the affidavit. [Doc. No. 39]. Plaintiffs did not file a response to the motion to exclude.

2

## II.    BACKGROUND

### A.    <u>Authority to Disqualify an Individual From Operating a Commercial Motor Vehicle</u>

Given that this matter centers around McDowell's loss of his CDL, it is prudent to review the circumstances in which an individual may be suspended or permanently disqualified from operating a commercial motor vehicle. The Registry of Motor Vehicles ("RMV") may suspend or disqualify an individual from operating a commercial motor vehicle if that person commits certain motor vehicle offenses. Pursuant to Mass. Gen. Laws ch. 90F, § 9, the relevant offenses are as follows:

> (A) Any person[] who holds . . . a license to operate a commercial motor vehicle . . . is prohibited from operating a commercial motor vehicle for a period of not less than 1 year if convicted of a first violation of:
>   1) Operating a commercial motor vehicle or a motor vehicle under the influence of drugs or alcohol; . . .
>   3) Leaving the scene of an accident involving a commercial motor vehicle or a motor vehicle driven by the person; [or]
>   4) Refusing to submit to a chemical test or analysis of the person's breath or blood after operating a commercial motor vehicle or motor vehicle. . . .
> (B) Any person shall be disqualified for life if convicted of 2 or more violations of any of the offenses specified in subsection (A), or for 2 or more refusals to submit to a chemical test or analysis of the person's breath or blood after operating a commercial motor vehicle or a motor vehicle, or any combination of those offenses, arising from 2 or more separate incidents. . .
> (E) Any person shall be disqualified from operating a commercial motor vehicle for a period of not less than sixty days if convicted of two serious traffic violations . . . committed in the operation of a commercial motor vehicle arising from separate incidents occurring within a three-year period.

M.G.L. ch. 90F, § 9.

Relevant to this case, a "conviction" for purposes of Section 9(A) includes an entry for continuation without a finding. *Tirado v. Bd. of Appeal on Motor Vehicle Liability Polices and*

*Bonds*, 472 Mass. 333, 340 (2015) ("[A]n admission to sufficient facts to warrant a finding of guilty and the continuance of the case without a finding of guilty is a 'conviction' as that term is defined in G.L. c. 90F, § 1.").

Individuals may appeal a suspension or disqualification of their CDL in certain circumstances. Pursuant to Mass. Gen. Laws ch. 90, § 24, an individual who has been charged with operating under the influence and whose CDL has been suspended may petition the RMV to restore their CDL upon a dismissal of the charges. That statute provides, in part, that:

> [T]he defendant may immediately, upon the entry of a not guilty finding or dismissal of all charges . . . apply for and be immediately granted a hearing before the court which took final action on the charges for the purpose of requesting the restoration of said license. At said hearing, there shall be a rebuttable presumption that said license be restored, unless the commonwealth shall establish, by a fair preponderance of the evidence, that restoration of said license would likely endanger the public safety.

M.G.L. ch. 90, § 24(1)(f)(1).

Under Subsection (1)(f)(1), the tribunal has discretionary authority to reinstate an operator's CDL. *See* [*id*.].

Relatedly, an individual whose CDL has been suspended for refusal to submit to a chemical test or blood analysis may appeal that suspension pursuant to Subsection (1)(g) of the same statute. The pertinent part of Section 24 relating to such refusals holds that:

> Any person whose license . . . has been suspended . . . shall, within fifteen days of the suspension, be entitled to a hearing before the registrar which shall be limited to the following issues: (i) did the police officer have reasonable grounds to believe that such person had been operating a motor vehicle while under the influence of intoxicating liquor . . ., (ii) was such person placed under arrest, and (iii) did such person refuse to submit to such test or analysis. If, after such hearing, the registrar finds on any one of the said issues in the negative, the registrar shall forthwith reinstate such license, permit or right to operate. The registrar shall create and preserve a record at said hearing for judicial review."

M.G.L.ch. 90, §24(1)(g).

Under Subsection (1)(g), the tribunal does not have discretionary authority to reinstate an operator's CDL. *See* [*id.*].

Finally, the registrar may suspend or revoke a CDL without a hearing pursuant to Mass. Gen. Laws ch. 90, § 22(a) if a driver poses an immediate threat to safety provided that the driver:

> [H]as committed a violation of the motor vehicle laws of a nature which would give the registrar reason to believe that continuing operation by such [license] holder is and will be so seriously improper as to constitute an immediate threat to the public safety . . . Said operator shall be entitled to a hearing within thirty days of the suspension or revocation, and the registrar shall so advise him in his notice of suspension or revocation."

M.G.L. ch. 90, § 22(a).

## B.   Factual Background

McDowell obtained a CDL in 1992. [Doc. No. 29-4 at 1]. Plaintiffs' complaint seeks to recover damages for economic and emotional injuries resulting from a suspension and eventual lifetime ban of McDowell's CDL. *See generally* [Doc. No. 1]. Plaintiffs assert that Holmes and the Town should be liable for the suspension and permanent revocation of McDowell's CDL and any subsequent damages. *See generally* [*id.*]. Holmes is a police officer employed by the Harwich Police Department. [Doc. No. 36 at ¶ 2]. Over the last two decades, McDowell has been involved in numerous motor vehicle incidents occurring in a variety of towns and cities in Massachusetts. *See generally* [Doc. No. 36]. Some of the relevant incidents occurred in Harwich, Massachusetts. *See* [*id.* at ¶ 17].

On August 9, 2006, McDowell was arrested in Yarmouth, Massachusetts for operating a motor vehicle under the influence of liquor ("OUI-Liquor"), among other reasons. [Doc. No. 36 at ¶ 3; Doc. No. 33-1 at 9–11]. McDowell refused to perform a chemical test or blood analysis at that time, establishing both his first chemical test refusal ("CTR") for purposes of this timeline and

McDowell's first M.G.L. ch. 90F, § 9(A) violation. [Doc. No. 36 at ¶ 4; Doc. No. 29-4 at 15].

Plaintiff was charged with OUI-Liquor, among other charges. *See* [Doc. No. 33-1 at ¶¶ 9–11]. On

October 5, 2006, McDowell admitted to facts sufficient to warrant a finding of guilty in Barnstable

District Court, constituting McDowell's second M.G.L. ch. 90F, § 9(A) violation. [Doc. No. 33-1

at 11; Doc. No. 29-4 at 2, 15–16]. The court continued the matter without making a finding for

one year with probation and required the completion of an alcohol education or treatment program.

[Doc. No. 29-4 at 2]. In June 2007, McDowell was discharged on all counts. [*Id.* at 10; Doc. No.

33-1 at 11].

On September 4, 2015, McDowell was involved in a hit and run incident in Dennis,

Massachusetts. [Doc. No. 36 at ¶¶ 6–7; Doc. No. 29-4 at 2]. While attempting to pass a child on a

bicycle, McDowell entered the opposing lane of traffic and side swiped a van driving the other

direction. *See* [Doc. No. 29-2 at 65]. McDowell testified that he pulled over upon contacting the

van and waited fifteen minutes for the van to return to the scene. [*Id.*]. When the van did not return,

McDowell left and attempted to return to his shop. [*Id.*]. He was intercepted by Dennis police

officers and arrested for OUI-Liquor. [Doc. No. 36 at ¶ 8]. McDowell refused to perform a

chemical test or blood analysis during the booking process, resulting in his second CTR and third

M.G.L. ch. 90F, § 9(A) violation over two incidences. [*Id.* at ¶ 9; Doc. No. 29-4 at 16].

Also on September 4, 2015, the Massachusetts Registry of Motor Vehicles ("RMV") issued

a lifetime suspension of McDowell's CDL. [Doc. No. at ¶ 10]. The parties agree that the basis for

the suspension was McDowell's two CTRs. [*Id.*]; *see* [Doc. No. 29-4 at 2] ("When the [second]

CTR was reported to the Registrar of Motor Vehicles ('Registrar'), she reviewed McDowell's

driving history and determined that, at the time of the September 4, 2015, CTR, McDowell had a

prior lifetime CTR and had been convicted of OUI and/or assigned to an alcohol education, or

treatment program at least once. Accordingly, and pursuant to G.L. c. 90F, § 9, she ordered McDowell's CDL downgraded to a Class D license and disqualified him for life from obtaining a new CDL.").

McDowell appealed the RMV's lifetime suspension of his CDL. [Doc. No. 36 at ¶ 11]. The complaint alleges (and Defendants seem to concede) that McDowell's basis for appealing was his belief "that the second CTR was invalid." [*Id.*; Doc. No. 1 at ¶ 24]. However, RMV records suggest that "McDowell did not challenge this chemical test refusal." [Doc. No. 29-4 at 9]. McDowell's lifetime suspension was affirmed by the RMV Board of Appeals (the "Board"). [Doc. No. 36 at ¶ 12]. McDowell then appealed again to the Barnstable Superior Court, which remanded the matter back to the Board. [*Id.* at ¶¶ 13–15]. Upon rehearing the matter, the Board reinstated McDowell's CDL. [*Id.* at ¶ 15; Doc. No. 1 at ¶¶ 26–30]. The parties dispute whether the Board used discretionary authority to reinstate McDowell's CDL or if it was obligated to do so by law. [Doc. No. 36 at ¶ 15]; *but see* [Doc. No. 29-4 at 3] ("[T]he Board exercised its discretionary authority and allowed McDowell to restore his CDL upon completion of all required testing.").

On June 23, 2021, McDowell was involved in a hit and run incident in Harwich, Massachusetts with an individual named Tiffany Walsh (the "Walsh Incident"). [Doc. No. 36 at ¶ 16; Doc. No. 29-12 at 4]. Plaintiffs admit that McDowell backed the trailer attached to his vehicle into Walsh's vehicle and then drove away. [Doc. No. 36 at ¶ 16]; *see also* [Doc. No. 29-2 at 55] ("Q. Okay. But was Tiffany Walsh's car damaged in some incident? . . . [A.] [T]he trailer just nicked the front of her car . . . So, it was a very, very light incident and I pulled out and I left. I never knew I hit the car. . . ."). At the time of the accident, McDowell was unaware that he had struck Walsh's vehicle. [Doc. No. 29-2 at 56]. She called the police, and Holmes arrived to investigate. *See* [*id.*]. McDowell returned to the scene approximately twenty minutes later to pick

up additional machinery needed for work and learned of the incident only upon his return. [*Id*. at 53–56]. It does not appear that McDowell was cited for the incident. *See generally* [Doc. No. 29-10].

On July 14, 2021, McDowell got into another incident in Harwich, Massachusetts (the "Bridge Incident"). [Doc. No. 36 at ¶ 17]. McDowell was towing an excavator on a low bed trailer "when a hydraulic line from the machine came into contact with a bridge overpass." [*Id.*; Doc. No. 29-12 at 2]. McDowell did not stop and continued to drive nearly a mile up the road to his destination, leaking oil from the damaged hydraulic line along the way. [Doc. No. 36 at ¶¶ 18–19]. Once there, he delivered the machine to an excavation company called Robert Our and at that point realized that the hydraulic line had been damaged. [Doc. No. 29-2 at 67–68]. A Robert Our employee notified the Department of Public Works ("DPW"), which then notified the police. [Doc. No. 36 at ¶ 20].

Holmes was one of the officers who arrived to investigate the incident. [Doc. No. 29-2 at 71–82]. Holmes cited McDowell for leaving the scene of property damage and negligent operation of a motor vehicle, though McDowell later contested the citation and it was dismissed. [Doc. No. 36 at ¶ 22]. In addition, Massachusetts State Police arrived on scene and issued McDowell a citation for an expired overweight permit, over height allowance, and motor carrier safety violations. [*Id.* at ¶ 23].

Plaintiffs allege that the incident did not cause any damage to the bridge and that McDowell, along with a Robert Our employee, cleaned up the road spillage. [*Id.* at 19–23]. Holmes' Immediate Threat Report states that when he returned to the scene the following day, he observed scape marks along six of the bridge supports and visible spray patterns of hydraulic fluid on the underside of the bridge and on the bridge supports. [Doc. No. 29-12 at 3]. Holmes also

observed a "large swath" of hydraulic fluid oil stains affecting multiple roadway lanes. [*Id.*]. His report further states that Harwich Highway Department assisted Robert Our in spreading sand on the road to absorb the hydraulic fluid, that the highway department then used road sweepers to clean up the sand, and that "[e]ven though all of the surface fluid was absorbed, there is a high likelihood that the oil will rise to the surface upon the addition of any amount of precipitation. This is likely to result in motor vehicle crashes." [*Id.*]

On July 16, 2021, two days after the Bridge Incident occurred, Holmes issued an Immediate Threat Notice. [*Id.* at ¶ 24]. In the accompanying Immediate Threat Incident Report, Holmes summarized his understanding of and observations from the Bridge Incident. *See generally* [Doc. No. 29-12]. His report discussed the extent of the damage he observed to the excavator, the bridge, and the road. *See generally* [*id.*]. The report also mentions the Walsh Incident and a third incident. [*Id*. at 4]. According to the report, the third incident occurred in Harwich, Massachusetts on December 23, 2020. [*Id.*]. The report states that McDowell was towing a trailer with an excavator on board and that the excavator made contact with and caused extensive damage to a guardrail. [*Id.*]. McDowell was apparently unaware he had struck the guardrail until contacted by Harwich Police. [*Id.*]. Neither party has provided any evidence relating to this third incident. Plaintiffs do not dispute that Holmes was acting on behalf of the Town when he issued the Immediate Threat Notice. [Doc. No. 36 at ¶ 25].

On December 20, 2021, McDowell's Immediate Threat Suspension was removed and his CDL was reinstated. [*Id.* at ¶ 26]. The parties did not provide the circumstances or justification related to the removal of the Immediate Threat Suspension and reinstatement of McDowell's CDL.

On May 25, 2022, McDowell was issued a citation for speeding in Wareham, Massachusetts. [*Id.* at ¶ 29]. He was found responsible on August 19, 2022. [*Id.* at ¶ 30]. On

November 23, 2023, McDowell was issued a citation for speeding in Yarmouth, Massachusetts. [*Id.* at ¶ 31]. He was found responsible on December 19, 2022. [*Id.* at ¶ 32]. On December 21, 2022, as a result of these two speeding incidents, the registrar of the RMV disqualified McDowell from holding a CDL for sixty days. [Doc. No. 29-4 at 3–4; Doc. No. 29-13 at 10]. Plaintiffs contend that this disqualification was improper because the speeding offenses occurred in a passenger rather than commercial vehicle. [Doc. No. 36 at ¶¶ 29–32; Doc. No. 33-1 at 5].

On March 7, 2023, McDowell paid a $100 fee and began the CDL reinstatement process. *See* [Doc. No. 29-4 at 4]. However, the RMV reviewed McDowell's driving history and declined to reinstate his CDL. *See* [*id.*]. Instead, on March 9, 2023, the RMV issued McDowell a second lifetime disqualification. [*Id.*]. The review team "found that McDowell had not remained in good standing with his CDL driving privileges and that he was no longer eligible to hold a CDL." [*Id.*]. The RMV's notice to McDowell dated March 9, 2023, cites McDowell's two CTRs (from August 14, 2006 and September 8, 2025) only. [*Id.*; Doc. No. 29-13 at 1–5; Doc. No. 36 at ¶ 33]. However, Plaintiffs contend without citing to any evidence that the RMV's "decision was based on false allegations made by Holmes." [Doc. No 36 at ¶ 33]; *but see* [*id.* at ¶¶ 34–35].

On April 13, 2023, McDowell appealed the lifetime disqualification. [*Id.* at ¶ 36]. On June 27, 2023, the Board affirmed the decision. [*Id.* at ¶ 38]. Although the Board's decision summarizes McDowell's driving history, which includes a brief summary of the Bridge Incident and speeding convictions in its Findings of Fact, the Board did not rely upon those matters as the basis for upholding the disqualification. *See* [Doc. No. 29-4 at 18] ("The Board finds that the Registrar's order disqualifying McDowell from holding a commercial driver's license in Massachusetts based on the August 9, 2006, CTR and subsequent October 5, 2006, OUI conviction, and separate,

September 4, 2015, CTR, is supported by the evidence. McDowell's lifetime CDL disqualification is legal and proper and may not be disturbed.").

The Board's decision states that it reconsidered its 2018 ruling reinstating McDowell's CDL and that the basis for its 2023 decision affirming the second lifetime disqualification is McDowell's two CTRs from 2006 and 2015 along with his first OUI conviction related to the 2006 incident. [*Id.* at 17] (quoting *Callahan v. Board of Appeal*, 90 Mass. App. Ct. 196, 201 (2016)) ("The Board realizes that in 2018 it allowed McDowell to reinstate his CDL privilege. However, . . . 'administrative agencies generally retain inherent authority to reconsider their decisions.'"); [*id.* at 15] ("The [continuation without a finding] constituted a first OUI conviction as defined by G.L. c. 90F, § 1."); [*id.* at 16] ("There is no doubt that McDowell's September 4, 2015 CTR, his August 9, 2006, CTR, and his October 5, 2006, OUI conviction are offenses covered by subsection (A) of G.L. c. 90F, § 9.").

## III.  MOTION TO STRIKE [DOC. NO. 39]

Defendants move to strike Exhibits 4 and 5 to the counsel affidavit, [Doc. No. 33-1 at 17–22], submitted in support of Plaintiffs' opposition to Defendants' motion for summary judgment. [Doc. No. 39]. Exhibits 4 and 5 are undated and unsigned reports from Thomas Hester, a purported investigator hired by Plaintiffs. [Doc. No. 33-1 at 17–22]. Specifically, Exhibit 4 is titled "Interview of Tiffany Welsh [sic] re: Accident at True North Farm, Harwich MA" and consists of statements from Ms. Walsh and McDowell, and it also paraphrases some of Holmes' statements from the Immediate Threat Notice. [*Id.* at 18–19].  Exhibit 5 is titled "Responding to the scene of a PKM truck hitting a Route 6 Overpass in N.Harwich ,MA [sic]." Exhibit 5 summarizes conversations Mr. Hester allegedly had with McDowell and various police officers at the Bridge Incident, including Holmes. [*Id.* at 21–22]. Exhibit 5 also states that Mr. Hester and McDowell

returned to the site of the Bridge Incident a few days later and observed scrape marks and hydraulic spray on the bridge. [*Id.* at 22].

Defendants argue that Exhibits 4 and 5 should be excluded under Fed. R. Evid. 801(c) because they are based on hearsay. [Doc. No. 40 at 3, 5–7]. Defendants also argue that the exhibits should be excluded under Fed. R. Civ. P. 26(a)(2) and (e) because Plaintiffs did not identify Mr. Hester as an expert witness, under Fed. R. Evid. 702 because the reports are based on insufficient facts and data, and under Fed. R. Evid. 403 because the reports are unfairly prejudicial. [*Id.* at 3, 7–12].

I agree with Defendants and, in any event, Plaintiffs have failed to oppose the motion. *See Latimore v. Trotman*, 2021 WL 5763009, at *1 (D. Mass. Dec. 3, 2021) (citing *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7–8 (1st Cir. 2002)) ("When a party fails to file a timely opposition, a court may consider the motion unopposed or the opposition waived and allow the motion."). Therefore, Defendants motion to strike, [Doc. No. 39], is granted.

## IV.  MOTION FOR SUMMARY JUDGMENT [DOC. NO. 29]

### A.  <u>**Standard of Review**</u>

Summary judgment is appropriate when, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co*., 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). To prevail, the moving party must show that "there is no factual determination which a 'rational factfinder' could make as to the 'existence or nonexistence' of a fact that 'has the potential to change the outcome of the suit.'" *Gibson Found., Inc. v. Norris*, 88 F.4th 1, 5 (1st Cir. 2023) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4–5 (1st

Cir. 2010)). Although the moving party carries the burden of establishing that there is no genuine issue as to any material fact, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 331 (1986).

Courts "must consider the record and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant," but "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.'" *Dixon-Tribou v. McDonough*, 86 F.4th 453, 458 (1st Cir. 2023) (quoting *Lahens v. AT&T Mobility Puerto Rico, Inc.*, 28 F.4th 325, 333 (1st Cir. 2022)). The non-moving party may not simply "rest upon mere allegation or denials," but instead "must present affirmative evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986); *Bellone v. Southwick-Tolland Regional School District*, 748 F.3d 418, 424 (1st Cir. 2014). In reviewing a summary judgment motion, a court may examine "all of the record materials on file" "including depositions, documents, electronically stored information, affidavits or declarations…or other materials." Fed. R. Civ. P. 56(c); *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014).

### B. <u>Discussion</u>

As an initial matter, the parties seem to have recycled their Rule 12 briefs for purposes of this Rule 56 motion while making few to no changes. Indeed, both parties' arguments center around whether the complaint does or does not sufficiently state a claim. *See generally* [Doc. Nos. 30, 34]. This is unacceptable.

Pursuant to Local Rules of this Court, a party moving for summary judgment must "include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation." L.R. 56.1. "When the nonmovant bears the ultimate burden of proof on a given

issue, he must make a factual showing, by means of competent and specific evidence, sufficient to establish the essential elements of his claim." *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005) (citation omitted). The nonmovant may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided for in Rule 56—set out specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56; L.R. 56.1. And, like the movant, the opposing party is required by the local rules to submit its own statement of materials facts as to which it contends a genuine fact dispute exists. *See* L.R. 56.1. Facts proffered by a party in a Local Rule 56.1 Statement and not opposed by the other side may be deemed admitted. *See, e.g.*, *Stonkus v. City of Brockton Sch. Dept.*, 322 F.3d 97, 102 (1st Cir. 2003).

The summary judgment record is viewed in the light most favorable to the non-moving party, and all reasonable inferences are drawn in that party's favor*, see Mariana-Colon v. Dept. of Homeland Sec. ex. Rel. Chertoff*, 511 F.3d 216, 221 (1st Cir. 2007), but if a party wishes the Court to consider evidence in support of its claim, it must be referenced in its Local Rule 56.1 Statement. "The Court is not required to sift through the summary judgment record to marshal evidence in support of a party's claims or arguments." *Ramos v. Flynn*, No. 06-cv-10645, 2009 WL 2207191, at *2 (D. Mass. July 22, 2009).

Now turning to Plaintiffs' claims, they are dismissed in their entirety for the reasons ascribed below.

### 1. <u>Count One: Violation of 42 U.S.C. § 1983 (Holmes and The Town)</u>

Count One asserts a claim under 42 U.S.C. § 1983 against both Holmes and the Town. [Doc. No. 1 at ¶¶45–48]. "Section 1983 creates a private right of action for redressing abridgements or deprivations of federal constitutional rights." *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir. 1995). "A claim under § 1983 has two 'essential elements': the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights

14

secured by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). The second element requires the plaintiff to show that the defendants caused the alleged deprivation. *Id.*

To the extent Plaintiffs' Section 1983 claim seeks to recover damages based on the RMV's 2023 lifetime disqualification of McDowell's CDL, the claim fails because Plaintiffs cannot show that the defendants caused the alleged deprivation. *See* [Doc. No. 34 at 4–5] ("As alleged in the Plaintiffs' Complaint, and not proven otherwise, the initial immediate threat suspension filed by Holmes, coupled with Holmes' other false allegations against McDowell, were the proximate cause of McDowell's later CDL suspensions as the claims made by Holmes, which were false, were relied upon by the Registry of Motor Vehicles and appellate venues in upholding the later CDL suspension."). The only evidence Plaintiffs cite in support of its argument are two paragraphs from the Board's 2023 decision reinstating the lifetime disqualification that are found in the Boards' Findings of Fact. [Doc. No. 34 at 5] (citing [Doc. No. 29-4 at ¶¶ 19–20]). However, as previously discussed, the Board's analysis and conclusion make clear that it did not rely on the evidence provided by Holmes in choosing to reinstate the lifetime disqualification. *See* [Doc. No. 29-4 at 13–18] ("The Board finds that the Registrar's order disqualifying McDowell from holding a commercial driver's license in Massachusetts based on the August 9, 2006, CTR, and subsequent October 5, 2006, OUI conviction, and separate, September 4, 2015, CTR, is supported by the evidence.").

Accordingly, Plaintiffs claim is limited to damages resulting from the RMV's July 16, 2021 implementation of an immediate threat suspension.

a.    <u>Section 1983 Claim Against Holmes</u>

Count One alleges a violation of McDowell's right to due process under the Fourteenth Amendment. [Doc. No. 1 at ¶¶ 45–48]. The Fourteenth Amendment's Due Process Clause "has both procedural and substantive components." *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005). Procedural due process "ensures that government, when dealing with private persons, will use fair procedures." *DePoutot*, 424 F.3d at 118 (citation omitted). Substantive due process "safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them." *Id.* The complaint alleges that McDowell was deprived of due process by Holmes' "issuing an immediate threat suspension without good cause." [Doc. No. 1 at ¶ 46] ("By issuing an immediate threat suspension without good cause, Officer Holmes, acting on behalf of the defendant Town of Harwich, deprived the plaintiff of his liberty and property interests without due process of law in violation of the 14th Amendment to the United States Constitution."). It is unclear from that statement whether Plaintiffs allege a procedural or substantive due process violation, but Count One fails under either analysis.

Substantive due process "claims are limited to government action that, by its very nature, shock[s] the conscience . . . and [are] reserve[d] . . . for truly horrendous situations." *Freeman v. Town of Hudson*, 714 F.3d 29, 40 (1st Cir. 2013) (citation omitted). Plaintiffs' claim does not meet that standard.

Plaintiffs repeatedly allege that "Holmes knowingly, intentionally, and falsely accused McDowell of both criminal and civil misconduct, the purpose and effect of which was to have his driving privileges suspended." [Doc. No. 34 at 4]; *see* [*id.*] ("[T]he Request for Immediate Threat License Suspension/Revocation submitted by Holmes contained false allegations. Specifically, the vehicle operated by McDowell did not strike the bridge, McDowell did not damage the bridge, and

McDowell was not involved in two hit and run crashes within the six months prior to the Holmes' July 15, 2021 filing of the report."); [*id.*] ("[A] critical element of the Plaintiffs' claim [is] that Holmes falsely accused McDowell of misconduct."); [Doc. No. 33-1 at ¶ 4] ("The claims concerned the fraudulent claim of a hit and run involving Ms. Walsh, a second fraudulent claim of a leaving the scene of an accident, and the fraudulent claims with respect to the hydraulic line damaging the bridge."); [*id.* at ¶ 7] ("As it relates to the Walsh incident, Holmes made a knowing, willful and intentional embellishment and falsification of the incident."). But Plaintiffs do not cite any evidence in support of that argument. *See generally* [*id.*].

And, in fact, the record shows that McDowell did commit the infractions that Holmes alleges. As Defendants correctly note, Plaintiffs admit in their Response to Defendants' Statement of Material Facts that on September 4, 2015, McDowell side swiped a van and left the scene of the accident before he was able to inform police, *see* [Doc. No. 36 at ¶¶ 6–8]; on June 23, 2021, McDowell "made contact" with Ms. Walsh's vehicle and left the scene before contacting the police, *see* [*id.* at ¶ 16]; and on July 14, 2021, a hydraulic line from equipment that McDowell was towing came into contact with a bridge and he left the scene before informing the police, *see* [*id.* at ¶¶17–29]. [Doc. No. 41 at 2]. McDowell also admitted to these same facts in his deposition. *See* [Doc. No. 29-2 at 65] (admitting to "clip[ing] an old van" and leaving the scene); [*id.* at 55–56] (admitting to "knick[ing] the front of [Ms. Walsh's] car" and leaving the scene because he "never knew [he] hit the car"); [*id.* at 67–71] (admitting "Yeah, the hydraulic arrangement" on the excavator he was towing "came in contact with the bridge" and that he left the scene).

Because there is no dispute of material fact and the record shows that Holmes did not fabricate evidence, Plaintiffs cannot show that Holmes engaged in behavior that shocks the

conscience. Accordingly, summary judgment on the substantive due process claim against Holmes is warranted.

Plaintiffs' procedural due process claim against Holmes also fails. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Pimental v. City of Methuen*, 323 F.Supp.3d 255, 269 (D. Mass. 2018) (quoting *Bd. Of Regents v. Roth*, 408 U.S. 564, 569 (1972)). Analysis of an alleged violation of procedural due process rights requires two steps: "[w]e ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). The parties do not dispute that the suspension of McDowell's CDL deprived him of a liberty or property interest. *See* [Doc. No. 30 at 4–5]; *Dixon v. Love*, 431 U.S. 105, 112 (1977) (citation omitted) ("Suspension of issues licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."). The question is thus whether the process McDowell received was sufficient.

The due process clause is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The fundamental requirement of procedural due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (citation omitted). Defendants argue that McDowell received due process because he was afforded a timely post-suspension hearing, which was ultimately resolved in his favor. [Doc. No. 30 at 6–7]. And Plaintiffs admit that McDowell did have post-suspension opportunities to be heard and that he was successful in his appeal. *See* [Doc. No 34 at 4] ("While the defendants point to the fact that McDowell had opportunities to

challenge the accusations, and that to some extent, such efforts were successful . . . ."); [Doc. No. 36 at ¶ 26] ("On December 20, 2021, McDowell's Immediate Threat Suspension was removed and his CDL was reinstated.").

However, Plaintiffs contend that Defendants misunderstand their argument: "[Defendants] ignore a critical element of Plaintiffs' claims. Plaintiffs contend that Holmes falsely accused McDowell of misconduct." [Doc. No. 34 at 4]; *see also* [*id.* at 5] ("As it relates to the defendants' claims that McDowell had due process safeguards available to him to redress his CDL suspensions, and that McDowell exhausted those avenues, such a claim is without merit and not relevant to Holmes' initial intentional wrongdoing which resulted in McDowell's subsequent CDL suspension."). The crux of Plaintiffs' procedural claim against Holmes, at least as it is stated in Plaintiffs' responses to Defendants' statement of material facts, is that "any appeal process did not afford McDowell to have Holmes testify under oath and be subjected to cross-examination." [Doc. No. 36 at ¶¶ 33, 37–39, 41].

As a preliminary issue, this argument is moot given that McDowell successfully appealed the immediate threat suspension without having Holmes appear to testify. Additionally, Holmes' failure to appear for cross examination at RMV proceedings does not amount to a violation of McDowell's due process because McDowell was not entitled to a full evidentiary hearing. As Defendants correctly argued in their motion for summary judgment and again in their reply, "procedural due process in the administrative setting does not always require application of the judicial model," and the Supreme Court has held that the private right to retain one's driver's license is not so great as to demand a full evidentiary hearing prior to an adverse action. [Doc. No. 30 at 5–6; Doc. No. 41 at 2–3]; *Dixon v. Love*, 431 U.S. 105, 113 (1977) (citation omitted) ("The private interest affected by the decision here is the granted license to operate a motor vehicle. . .

[T]he nature of the private interest here is not so great as to require us 'to depart from the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action.'"). Consequently, Plaintiffs cannot prove that McDowell was not afforded procedural due process. Plaintiffs' procedural due process claim against Holmes is dismissed.

### b.    <u>Section 1983 Claim Against the Town</u>

Plaintiffs Section 1983 claim against the Town is based on a "custom [of] permitting police officers to engage in such misconduct with impunity, and in intentionally failing to train or supervise officers with respect to immediate threat suspension requests." [Doc. No. 34 at 6].

However, a municipality may not be held liable under Section 1983 solely for employing a tortfeasor. *Monell v. Dept. of Soc. Servs. Of the City of N.Y.*, 436 U.S. 658, 691 (1978). Instead, to prevail on a Section 1983 claim against a municipality, plaintiffs must prove that the violation of their rights occurred because of a municipality's policy or custom. *Baez v. Town of Brookline, Mass., Brookline Police*, 44 F.4th 79, 82 (1st Cir. 2022) (citing *Monell*, 436 U.S. at 694).

Policies and customs can be both official or unofficial, so they "include[] the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 563 U.S. 51, 61 (2011) (citing cases). Furthermore, under any of those scenarios, the policy or custom "must have been the cause of and the moving force behind the deprivation." *Miller v. Kennebec Cnty.,* 219 F.3d 8, 12 (1st Cir. 2000) (citation and internal quotation marks omitted). Accordingly, "there are three elements to a § 1983 claim against a municipality: (1) a violation of the constitution or federal law; (2) a custom or policy of the municipality; and (3) causation between the custom or policy and the

constitutional deprivation ." *Off of the Pub. Guardian v. Elliot Hosp.,* No. 2l-cv-00705, 626 F. Supp. 3d 520, 530 (D.N.H. Sept. 8, 2022).

Plaintiffs' claim fails because they cannot prove any of these three elements. First, Plaintiffs do not allege how the Town violated the Constitution or a federal law. *See generally* [Doc. Nos. 1, 34]. Plaintiffs stated that Holmes "repeatedly violated [McDowell's] civil rights by falsely accusing him of criminal and civil misconduct" but do not articulate precisely which rights were purportedly violated or provide evidence in support of their claim. [Doc. No. 34 at 6]. To the extent Plaintiffs argue a due process violation, that claim fails for the reasons previously given.

Second, Plaintiffs cannot show that the Town had a custom or policy "permitting officers to engage in . . . misconduct with impunity, and in intentionally failing to train or supervise officers with respect to immediate threat suspension requests." [*Id.*]. Plaintiffs cannot cite to evidence of even a single instance where the Town permitted an officer to engage in misconduct, including Holmes. For the same reasons previously given, the record shows that Holmes' reports were truthful and that McDowell committed the infractions he was accused of. Plaintiffs also cannot cite evidence that the Town, intentionally or otherwise, failed to train or supervise its officers with respect to immediate threat suspension requests. Plaintiffs claim without citation that "the Harwich Police Department has no policy in effect as of July 15, 2021 for the filing of immediate threat suspension forms" and that they offer no training related to the same. [*Id.*]. However, the record shows that at least an interim policy had been in effect since January 26, 2016, prior to Holmes' issuing of the Immediate Threat Notice. *See* [Doc. No. 33-1 at 25].

Finally, even if the Town did have a custom permitting police officers to engage in misconduct or of failing to train its officers on the issuing of an Immediate Threat Notice, Plaintiffs' claim would still fail because Plaintiffs cannot show that those policies or customs

caused McDowell's permanent loss of his CDL. For the reasons previously given, the Board's decision to permanently revoke McDowell's CDL was based on his three preexisting M.G.L. ch. 90F, § 9(A) violations and not the information provided by Holmes.

Summary judgment of Plaintiffs' Section 1983 claim against the Town is therefore granted.

**2.    Count Two: Violation of the Massachusetts Civil Rights Act (Holmes and The Town)**

To establish a claim under the MCRA, a plaintiff must prove that "(1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation, or coercion.'" *Reproductive Rights Network v. President of Univ. of Mass.*, 45 Mass. App. Ct. 495, 505 (1998) (*quoting Swanset Dev. Corp. v. Taunton*, 423 Mass. 390, 395 (1996)).

Plaintiffs' MCRA claim is based upon an alleged due process violation under both the U.S. Constitution and laws of the Commonwealth of Massachusetts. [Doc. No. 1 at ¶ 50] ("By issuing an immediate threat suspension without good cause, Officer Holmes, acting on behalf of the defendant Town of Harwich, deprived the plaintiffs of their liberty and property interests without due process of law in violation of the Constitution and laws of the Commonwealth of Massachusetts."). Because Plaintiffs allege the same constitutional violation under the MCRA (Count Two) and Section 1983 (Count One), Count Two fails for the same reasons that Count One fails.

In addition, Defendants argue that "Plaintiffs have not stated any facts to support that interference that [sic] their alleged rights were violated by 'threats, intimidation, or coercion.'" [Doc. No. 30 at 10–11]. I agree. Plaintiffs concede that Defendants did not use threats or intimidation against McDowell but suggest without citation to any evidence or case law that

22

Holmes' "use of the judicial process and or administrative process to press knowingly fabricated claims against McDowell could certainly constitute coercion within the meaning of the statute." [Doc. No. 34 at 7–8] ("Assuming that Officer Holmes' conduct did not amount to threats or intimidation. . . ."). I disagree and, in any event, there is no evidence that Holmes fabricated claims against McDowell for the same reasons stated above.

Finally, Defendants argue, and Plaintiffs do not dispute, that "under Massachusetts Law, a municipality cannot be sued under the MCRA." [Doc. No. 30 at 12] (citing *McCarthy v. Szostkiewicz*, 188 F.Supp.2d 64, 66 (D. Mass. 2002)); *see generally* [Doc. No. 34].

Plaintiffs' claim for violation of the MCRA against both Holmes and the Town is therefore dismissed.

### 3.    Count Three: Negligence (Holmes and The Town)

Plaintiffs assert a claim of negligence against both Holmes and the Town. [Doc. No. 1 at ¶¶ 52–54]. Defendants argue that the claim against Holmes should be dismissed because it is statutorily barred. [Doc. No. 30 at 13–14] (citations omitted) ("[C]laims for negligence may not be asserted against a public employee, but rather only brought against the public employer. The Massachusetts Tort Claims Act absolves public employees from liability for their negligent acts performed within the scope of their official duties, M.G.L. ch. 258, § 2."). Plaintiffs do not contest this point. *See generally* [Doc. No. 34]. Accordingly, Plaintiffs' negligence claim against Holmes is dismissed.

Defendants argue that the negligence claim against the Town should also be dismissed because Holmes was not negligent and therefore the Town is not liable under the doctrine of respondeat superior. *See* [Doc. No. 30 at 14–16]. "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant

breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Jupin v. Kask*, 447 Mass. 141, 146 (2006) (citation omitted).

Defendants argue that Holmes was not negligent because he "did not owe the Plaintiffs a duty to withhold the Immediate Threat Notice." [Doc. No. 30 at 15]. I quibble with this framing as the proper question is whether a police officer has a duty to conduct a proper investigation and to truthfully report the facts of that investigation. But it makes no difference here as the Defendants also argue that there was no proximate cause because the RMV's decision to permanently suspend McDowell's CDL was based on "two Chemical Test Refusals and not Officer Holmes's issuance of the Immediate Threat Notice." [*Id.* at 15–16]. Plaintiffs make no attempt to respond to this argument. *See generally* [Doc. No. 34 at 10–11]. Therefore, Plaintiffs' negligence claim against the Town based on the doctrine of respondeat superior is dismissed.

In their opposition, Plaintiffs instead argue that their negligence claim is based upon the Town's "duty to train its officers on the issuance of immediate threat suspension requests, given that such action has serious consequences and carries a fairly high standard." [Doc. No. 34 at 9]. This claim fails for at least two reasons. First, Plaintiffs conflate the standard for surviving a motion to dismiss with that of summary judgment and have failed to cite any evidence of an alleged breach of duty as is required by Fed. R. Civ. P. 56(c). *Compare* [*id.* at 9–10] ("The Plaintiffs have alleged sufficient facts to show the Town's negligent conduct in that regard led to Holmes filing the immediate threat request, on his own, without the filing being reviewed by a supervisor.") *with* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). Additionally, for the reasons explained below (Count Four), tort claims based upon a duty to train or supervise are statutorily barred.

24

Consequently, Plaintiffs' claim of negligence against Holmes and the Town is dismissed.

### 4. <u>Count Four: Lack of Proper Supervision (The Town)</u>

Count Four asserts a claim for lack of proper supervision against the Town on the basis that the Harwich Police Department "had insufficient training and supervision with respect to the issuing and monitoring of immediate threat suspensions." [Doc. No. 1 at ¶ 56]. Defendants argue that the claim is statutorily barred by Section 10(j) of the Massachusetts Torts Claim Act. [Doc. No. 30 at 16–17]. Plaintiffs make no attempt to address this argument. *See generally* [Doc. No. 34 at 9–10]. Regardless, I agree with Defendants that the claim is statutorily barred.

Mass. Gen. Laws ch. 258, § 10(j) provides immunity for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation . . . which is not originally caused by the public employer or any other person acting on behalf of the public employer." M.G.L. ch. 258, § 10(j). "[T]he principal purpose of § 10(j) is to preclude liability … for failures to prevent or diminish harm." *Ward v. City of Boston*, 367 F.Supp.2d 7, 14 (D. Mass. 2005) (citation omitted) (alterations in original).

It is well established in Massachusetts that "[c]laims of failure to train or supervise 'are all claims based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance' and thus are barred by § 10(j)." *Ward*, 367 F.Supp.2d at 16 (citation omitted). Consequently, Plaintiffs' claim against the Town for lack of proper supervision is dismissed.

### 5. <u>Count Five: Intentional Infliction of Emotional Distress (Holmes)</u>

"To prevail on a claim of intentional infliction of emotional distress ('IIED'), a plaintiff must prove: (1) the defendant either intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of [defendant's] conduct; (2) that the conduct was 'extreme and outrageous' and beyond all possible bounds of decency and was 'utterly

intolerable in a civilized community'; (3) that the defendant's actions caused the plaintiff's emotional distress and (4) that the plaintiff sustained severe emotional distress." *Bassett v. Jensen*, 459 F.Supp.3d 293, 309 (D. Mass. 2020) (citations omitted) (alteration in original). "[T]he emotional distress suffered by the plaintiff [must be] severe and of such a nature that no reasonable person could be expected to endure it." *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997)

Defendants argue that Count Five should be dismissed because, among other reasons, Plaintiffs have failed to show that McDowell suffered severe emotional distress. [Doc. No. 30 at 18]. Specifically, Defendants argue that "the alleged distress caused by the filing of an Immediate Threat Notice could not be characterized as 'severe' and of a nature 'that no reasonable person could be expected to endure' [because] this is a standard procedure used to notify the Registry of Motor Vehicles of potentially dangerous drivers." [*Id.*].

Plaintiffs do not rebuff this point. Plaintiffs' sole argument is that "the issue of whether Officer Holmes engaged in intentional wrongful conduct is one for the ultimate fact-finder." [Doc. No. 34 at 10]. Plaintiffs' failure to address Defendants' argument concerning the severity of the emotional distress allegedly suffered therefore dooms the claim. Plaintiffs' IIED claim is therefore dismissed.

### 6.   Count Six: Negligent Infliction of Emotional Distress (Holmes and the Town)

"The elements of a claim for negligent infliction of emotional distress ('NIED') are: (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Bassett*, 459 F.Supp.3d at 310 (quoting *Sullivan v. Bos. Gas Co.*,

414 Mass. 129, 132 (1993)). Plaintiffs bring a claim for NIED against both Holmes and the Town. [Doc. No. 1 at ¶¶ 62–66].

Defendants argue that the NIED claim against Holmes should be dismissed because it is statutorily barred. [Doc. No. 30 at 13–14] (citations omitted) ("[C]laims for negligence may not be asserted against a public employee, but rather only brought against the public employer. The Massachusetts Tort Claims Act absolves public employees from liability for their negligent acts performed within the scope of their official duties, M.G.L. ch. 258, § 2."). Plaintiffs do not contest this point and instead argue that "if Officer Holmes negligently rather than intentionally inflicted emotional distress, the Town would be liable for such conduct but he would not be liable." [Doc. No. 34 at 10–11]. Accordingly, Plaintiffs NIED claim against the Holmes is dismissed.

Additionally, Defendants argue that Plaintiffs' NIED claim against the Town should be dismissed because "Plaintiff McDowell has . . . failed to identify any physical manifestation of any alleged psychological harm." [Doc. No. 30 at 19]. I agree. "Under Massachusetts law, for a plaintiff to survive summary judgment on the physical harm requirement, [the plaintiff] 'must corroborate [his] mental distress claims with enough objective evidence of harm to convince a judge that [his] claims present a sufficient likelihood of genuineness to go to trial.'" *Bassett*, 459 F.Supp.3d at 310 (quoting *Sullivan*, 414 Mass. at 132)).

Plaintiffs have failed to meet this burden. Plaintiffs' complaint merely alleges that McDowell "suffered and continue to suffer extreme mental distress, humiliation, anguish, and emotional and physical injuries, as well as economic losses." [Doc. No. 1 at ¶ 61]. There is no elaboration in Plaintiffs' complaint or in their opposition of the physical injuries McDowell allegedly suffered nor do Plaintiffs cite to any evidence to support the claim. *See generally* [Doc. Nos. 1 and 34]; *see Gouin v. Gouin*, 249 F.Supp.2d 62, 74 (D. Mass. 2003) (quoting *Sullivan*, 414

Mass. at 137) ("[A] successful negligent infliction of emotional distress claim … must do more than allege 'mere upset, dismay, humiliation, grief and anger.'"); *see also Anderson*, 477 U.S. at 248 (citation omitted) ("[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial.'"). Accordingly, Plaintiffs' NIED claim against both Holmes and the Town is dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to strike and motion for summary judgment, [Doc. Nos. 29, 39], are <u>GRANTED</u>.


SO ORDERED.

/s/ Myong J. Joun
United States District Judge
